**In re Clinton W. MURCHISON, Jr., Debtor.**

**Bankruptcy No. 385–30266–HCA–11.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

July 7, 1988.

David W. Elrod, Scott W. Davis, Holmes & Millard, P.C., Dallas, Tex., for D.M. Lynn, Plan Trustee.

---

John Peter Lee, Las Vegas, Nev., E. Paul Kieffer, Burke & Wright, Dallas, Tex., for appellants, Tony Roma and Arthur Blank.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEBTOR'S MOTION FOR SUMMARY JUDGMENT

HAROLD C. ABRAMSON,
Bankruptcy Judge.

On June 16, 1988, came on to be considered the Motion for Summary Judgment filed by the Plan Trustee in the above-referenced case, and the Court, after a consideration of the filed briefs and pleadings, a review of the applicable authorities, and after hearing arguments of counsel, is of the opinion that said Motion should be granted. The Court further finds as follows:

*Findings of Fact*

1. General Findings

1. On or about August 11, 1983, the Debtor executed a Guaranty of two promissory notes in the amounts of $2,440,000.00 and $1,000,000.00. The guaranty was in favor of the claimants, Tony Roma and Arthur Blank. The promissory notes were executed by Roma Restaurants, Inc., for the purchase of all the shares of stock in Roma Las Vegas, Inc. ("RLV"), Roma New York, Inc. ("RNY"), and an entity known as R & B Service Company ("R & B").

2. The sole shareholders of Roma Restaurants were Corland Corporation and L. Grant Peeples. The sole shareholder of Corland is Topcor, Inc., a Texas corporation. The sole shareholder of Topcor is the Debtor.

3. As security for the Roma Restaurant Obligations, the stock of RLV, RNY, and R & B was pledged to the Claimants pursuant to a Stock Pledge Agreement dated August 11, 1983.

4. Claimants concede that at the time of the execution of the Stock Pledge Agreements, the value of the stock of RNY was estimated to be approximately $1,480,-000.00.

5. As further security to the Claimants, and pursuant to a Memorandum of Agreement between the Claimants and Roma Restaurants, dated January 12, 1983, Roma Restaurants was obligated to make an accelerated payment of $1,000,000.00 in the event of the Debtor's death.

6. The $1,000,000.00 to be paid on Murchison's death was to be paid with proceeds of a life insurance policy owned by Topcor, Inc., and insuring the life of the Debtor. That insurance policy was given as security to the Claimants by an Assignment of Life Insurance Policy as Collateral executed on August 11, 1983.

7. On February 7, 1985, an involuntary petition under 11 U.S.C. § 303 was filed against the Debtor. On February 21, 1985, the Debtor converted the proceeding to one under Chapter 11 of Title 11, and relief was ordered.

8. On August 6, 1985, Claimants filed a proof of claim against the estate in the amount of $3,440,000.00. The basis of the claim was the personal guaranty executed by the Debtor on August 11, 1983.

9. Debtor's Plan of Reorganization was confirmed on July 8, 1986. Administration of the Plan continues today, as do claims objections such as this one.

*2. Facts Particularly Relevant to the Present Controversy*

10. On April 15, 1986, Roma Restaurants, and the Claimants, executed an Amended and Restated Installment Promissory Note to replace the one created on August 11, 1983.

11. The new note was in the amount of $1,250,000.00.

12. In the restructuring of the transaction, the guaranty of Tony Roma was limited to $250,000.00. Under the earlier transaction liability was not limited.

13. Pursuant to the First Amendment to Stock Pledge Agreement, dated April 15, 1986, the Claimants released from its security interest all stock of RNY.

14. As a further result of the restructuring, Roma Restaurants was released from its obligations to make an accelerated

payment of $1,000,000.00 on Debtor's death.

15. The 1986 restructuring of the Roma Restaurant obligation was made without the knowledge or consent of the Debtor.

16. The 1986 restructuring of the Roma Restaurant Obligation was made without the knowledge or approval of the Bankruptcy Court.

17. At no time have the Claimants agreed to release the Debtor from his personal guaranty of Roma Restaurants' Liability.

### CLAIMS OF THE PARTIES

18. On January 8, 1987, the Plan Trustee filed his Objection to Claim Number 20. Among other claims, the Trustee asserts that the Guaranty was discharged as a matter of law by material alteration of the original obligation.

19. The Claimants argue that the restructuring was not a material alteration of the contract. In fact, they assert that the alteration improved rather than prejudiced the position of the Debtor. Therefore, the alteration did not discharge the guarantor.

20. The Court finds that there are no material facts at issue, and that the Plan Trustee is entitled to a summary judgment as a matter of law.

### STANDARD FOR GRANTING SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 as incorporated by Bankruptcy Rule 7056 controls the granting of a summary judgment in an adversary proceeding in a bankruptcy case. The third sentence of Rule 56(c) provides that judgment shall be rendered forthwith if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also, Securities and Exchange Commission v. Spence & Green Chemical Company*, 612 F.2d 896, 901 (5th Cir.1980). The only issues to be determined on a motion for summary judgment are issues of law. *See, Central Oil & Supply Corp. v. U.S.*, 557 F.2d 511 (5th Cir.1977). In other words, when the only question is to what legal conclusions are to be drawn from an established set of facts, the entry of summary judgment is appropriate.

In applying this standard to the present controversy, the Court finds no material dispute as to material facts listed in this Court's findings of fact. Therefore, the Plan Trustee is entitled to summary judgment as a matter of law.

### CONCLUSIONS OF LAW

*i. Which law applies?*

■ The parties have raised the issue of what law controls the construction of the guaranty contract. The agreement itself provides that it shall be interpreted under Nevada law. Since parties to a contract are free to stipulate in advance a forum for settling controversies, the Court finds that Nevada law controls. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). However, it does not really matter. The law in Texas regarding sureties is nearly identical to the law in Nevada. *Compare, Williams v. Crusader Discount Corp.*, 75 Nev. 74, 334 P.2d 843, 846 (1959) *with, United States v. Vahlco Corp.*, 800 F.2d 462, 465 (5th Cir.1986).

*ii. Discharge of the Guarantor*

■ For some unfathomable reason, the courts have historically taken a particular interest in surety law. As a general statement of the rule, "[a]ny change in the contract between the creditor and principal which creates a different duty of performance on the part of the principal than that which the surety guaranteed, discharges the surety." *Williams*, 334 P.2d at 846. Also to be considered with this is Nevada Uniform Commercial Code, which holds:

1. The holder discharges any party to the instrument to the extent that without such party's consent the holder:

(a) ... releases ... any person against whom the party has a right of recourse or agrees to suspend the right to enforce against such person the instru-

ment or collateral or otherwise discharges such person ... or

(b) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

Nev.Rev.Stat. § 104.3606. The Court holds that the 1986 restructuring of the Roma Restaurant Obligations constituted a material alteration of the underlying debt guaranteed. The restructuring released valuable collateral securing the debt. Further, the restructuring significantly increased the risks assumed by the Debtor. Therefore, the alteration discharged the surety.

The practical effect of the "restructuring" of the indebtedness was to greatly increase the obligation of the Debtor under his guaranty. If the original notes had gone into default, and the Debtor had paid them according to his guaranty, he would have had a right to subrogation. Nevada recognizes the doctrine of subrogation. *Cf., Bennett v. Fidelity & Deposit Company,* 98 Nev. 449, 652 P.2d 1178 (1982); *Valley Power Co. v. Toiyabe,* 80 Nev. 458, 396 P.2d 137 (1964). Therefore, the Debtor would have had the same rights as did the original creditor. This would mean that the Debtor would have had the right to foreclose on collateral, and to seek contribution from co-guarantors. Under the terms of the new notes, the Debtor's rights were more limited. First, stock valued at over one million dollars was released as security for the note. Further, the liability of another party to the note was strictly limited. Finally, the drawer of the note was relieved from an obligation to pay an accelerated $1,000,000.00. The effect of these changes was to markedly increase the contingent liability of the Debtor.

These transactions were exactly the reason that the rule concerning discharge of guarantor's was created. It is plainly inequitable for two parties to a tripartite transaction to agree that the third party be liable. In other words, the rule is to prevent unsavory deals between a holder and a maker designed to disadvantage the guarantor.

The Debtor's obligation under his contract of guaranty has also been discharged pursuant to the provisions of Section 3–606 of the Uniform Commercial Code. That section provides that to the extent collateral securing a note is released by a holder, the guarantor is discharged. Nev.Rev.Stat. § 104.3606. Collateral has plainly been released in this instance. First, stock in the value of $1.48 million was released. Release of stock securing an obligation will discharge a guarantor. *Magnolia Homes Manufacturing Corp. v. Montgomery,* 451 F.2d 934 (8th Cir.1971). Second, the obligation of another party to the note was limited. Releasing a co-maker, co-guarantor, or endorser from liability may discharge the guarantor. *See, Beneficial Finance Co. of New York v. Husner,* 82 Misc.2d 550, 369 N.Y.S.2d 975 (N.Y.Sup. Ct.1975). Finally, the maker of the note was discharged from the obligation to pay $1,000,000.00 in the event of the Debtor's death. Release of the Debtor from an obligation to pay has the effect of releasing a person against whom the holder has recourse, and therefore discharges the guarantor.

## CONCLUSION

The undisputed facts demonstrate that collateral securing the promissory note in question was impaired. The value of the collateral was substantial. Therefore, under either the Uniform Commercial Code or under Nevada common law, the guarantor is discharged. Similarly, the agreement to relieve the drawer of the note from an obligation to pay an accelerated $1,000,-000.00 prejudiced the Debtor, and hence discharged his guaranty contract. Therefore, this case is appropriate for summary judgment as to that issue. The Court finds that the guaranty agreement is a nullity. Counsel for the Debtor is directed to submit a proposed form of judgment.